UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

VRAJ DILIPBHAI PATEL,     Petitioner,

v.     Civil Action No. 3:25-cv-373-RGJ

JEFF TINDALL, Jailer, Oldham County Detention Center;
SAMUEL OLSON, Field Office Director for U.S.
Immigration and Customs Enforcement;
KRISTI NOEM, in her official capacity as Secretary,
U.S. Department of Homeland Security;
PAMELA BONDI, Attorney General of the United States     Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Vraj Diliphnai Patel's ("Patel") Writ of Habeas Corpus. [DE 1]. Respondents moved to dismiss. [DE 22]. Petitioner responded, [DE 25], and Respondents replied, [DE 26]. This matter is ripe for adjudication. For the reasons below, the Court will **DENY** the Respondents' motion to dismiss [DE 22] and **GRANT** Patel's Petition for a Writ of Habeas Corpus. [DE 1]. As a result, Petitioner's motion to a temporary restraining order [DE 19] is **MOOTED**.

**I. Background**

Petitioner Patel is a citizen and native of India. [DE 1 at 1]. He is 20 years old and entered the United States in March 2024. [DE 1 at 5]. He fled his home country after the members of the majority political party in India physically attacked and threatened his life for supporting a separate political organization. [*Id.*]. Upon entering the United States, Patel was detained at the border, but subsequently released on his own recognizance on conditional parole. [*Id.*]. Upon his release, the United States issued a Notice to Appear and placed Patel in standard immigration removal

proceedings pursuant to 8 U.S.C. § 1229a[1] ("Section 1229a"). [*Id.*]. His first check in with Immigration and Customs Enforcement ("ICE") officials was then set for June 9, 2025. [*Id.*]. During this waiting period, Patel retained legal counsel and filed an I-589 application for asylum. [*Id.*]. At the June 9, 2025, check-in, Patel was detained. [*Id.* at 6]. After his detention, the Department of Homeland Security ("DHS") filed a motion to dismiss Patel's current Section 1229a removal proceedings for the purposes of placing Patel in expedited removal proceedings, 8 U.S.C. 1225(b)(1) ("Section 1225"). [*Id.*]. Patel's counsel filed an opposition to that motion on June 17. [*Id.*]. On June 18, 2025, Patel had two hearings set before an Immigration Judge ("IJ"). First, a 9 a.m. bond hearing, and subsequently, a 10 a.m. Master Calendar hearing, which was set for the motion to dismiss. [*Id.* at 8]. However, the IJ held the hearings in reverse order. [*Id.*]. That is, first, the IJ granted the DHS's motion to dismiss and dismissed Patel's Section 1229a proceedings. [*Id.*]. Then, the IJ denied Patel's bond request because he "no longer had relief pending," because his current removal proceedings had been dismissed before the Immigration Court. [*Id.*]. Patel has remained in detention since the June 9, 2025. [*Id.*].

Patel now seeks a Petition for Writ of Habeas Corpus against Jeff Tindall, the Oldham County Jailer; Samuel Olson, the Field Officer Director for U.S. Immigration and Customs Enforcement; and Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security, and Pamela Bondi, in her official capacity as the Attorney General of the United States. Patel contends that the actions by the United States violate both his due process rights, and the INA.

As an initial matter, Respondents assert that this Court does not have jurisdiction.

---

[1] Although the Court recognizes this Section is derived from the Immigration and Nationality Act ("INA") § 240, the Court will use U.S.C. citations throughout for uniformity and asks the Parties to do the same.

## II.　Jurisdiction

### A.　Standard

District courts have jurisdiction only where Congress has provided. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States." *Maldonado v. Olson*, 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (citing 28 U.S.C. § 2241(c)(3)). Although the Court "may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

### B.　Discussion

Respondents contend that this Court lacks jurisdiction to review Patel's claims. [DE 22 at 156]. Specifically, Respondents contend that 8 U.S.C. § 1259(b) bars review by this Court because "dismissal of Patel's § 1229a proceeding is not subject to judicial review." [*Id.*]. Additionally, Respondents claim that 8 U.S.C. § 1252(g) bars review because it prohibits jurisdictional review of "'any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g). Both arguments are misstatements of the review requested by Petitioner.

In *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020), the Supreme Court held that § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018)). And the Supreme Court has also rejected that Section 1252(g) is similarly narrow. That provision limits review of cases "arising from" decisions "to commence proceedings, adjudicate cases, or

3

execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court rejected the suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general jurisdictional limitation." *Reno v. American-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

As Patel states, his petition "challenges [the] current detention and the due process stripping tactics" of Respondents, not the removal itself. [DE 1 at 3]. Specifically, Patel is *not* "asking this Court to make any judgment on his fear of returning to India." [DE 25 at 106]. But instead, Patel "seeks release from his current unlawful detention." [*Id.*]. Trial courts across the country have found jurisdiction in similar cases. *Espinoza, et al., v. Kaiser, et al.,* 2025 WL 2675785, at *9 (E.D. Cal. Sep. 18, 2025) (holding that because "Petitioners seek their immediate release from custody, which they contend violates the Constitution of the United States" the court had proper habeas jurisdiction); *Salazar v. Kaiser*, 2025 WL 2456232, at *7 (E.D. Cal. Aug. 26, 2025) (holding that in a challenge of whether Section 1229a proceedings or Section 1225 proceedings controlled Petitioner's detention, Petitioner properly invoked habeas jurisdiction); *Munoz Materano v. Arteta*, 2025 WL 2630826, at *10 (S.D.N.Y. Sep. 12, 2025) (holding that the district court had proper jurisdiction to review a habeas petition even over concerns of expedited removal); *Orellana v. Baker*, 2025 WL 2444087, at *3 (D. Md. Aug. 25, 2025) (holding that because "Orellana does not ask this Court to enter an order staying ICE's execution of his removal order" but instead "Orellana challenges the legality of his detention pending the effectuation of his removal order. This Court has jurisdiction to evaluate this challenge."). Patel states that he is challenging his detention, not the IJ's decision, nor his removal. Because of that, this Court has jurisdiction to review the constitutionality of Patel's detention.

### III.   Discussion

Patel contends that he was wrongfully detained in violation of his Fifth Amendment Right to Due Process of the United States Constitution, and in violation of the INA. [DE 1 at 6-9].

**A.    Section 1229a v. Section 1225**

Immigration law provides for two main methods for removing noncitizens deemed ineligible to remain in the United States. Section 1229a and Section 1225. Here, the parties are in dispute about which removal proceedings govern Patel's detention, the standard removal proceedings of Section 1229a[2] or expedited removal proceedings of Section 1225.

"Section [1229a] removal proceedings take place before an [Immigration Judge (IJ)], an employee of the Department of Justice (DOJ) who must be a licensed attorney and has a duty to develop the record in cases before them." *Coalition For Humane Immigrant Rights, v. Noem*, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025)[3] (citing 8 U.S.C. § 1229a(a)(1), (b)(1) ("The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses.")). Further, *Coalition*, stated:

> [Section 240 proceedings] are adversarial proceedings in which the noncitizen has the right to hire counsel, examine and present evidence, and cross-examine witnesses. 8 U.S.C. § 1229a(b)(4). The hearings are recorded, and a transcript is made available if a party appeals the decision. Id. § 1229a(b)(4)(C). A section 240 proceeding typically takes place over the course of multiple hearings due to the built-in procedures. This allows time for noncitizens to both gather evidence in support of petitions for relief available in immigration court (like asylum and certain adjustments of status) and seek collateral relief from other components of DHS (like adjustment of status on the basis of marriage or family). Upon a decision by the IJ, either party may appeal to the Board of Immigration Appeals (BIA). 8 C.F.R. §§ 1240.15, 1003.1. If the BIA upholds a removal order, the noncitizen may then appeal that decision to a U.S. court of appeals. 8 U.S.C. § 1252.

---

[2] Detention provisions under Section 1229a are governed by 8 U.S.C. § 1226 ("Section 1226"). *Espinoza*, 2025 WL 2675785, at *10 (stating that Section 1226(a) is the detention authority for noncitizens placed in full removal proceedings under Section 1229a).

[3] Although this matter is currently on appeal, *Coalition for Humane Immigrant Rights, et al v. Kristi Noem, et al*, 25-5289 (D.C. Cir.), the underlying decision has not been stayed.

*Coalition*, 2025 WL 2192986, at *3 (internal record citations omitted). The decision is not final until exhaustion of the appeals. 8 U.S.C. § 1252; 8 C.F.R. 1003.39.

In the alternative, an individual can be placed in "expedited" removal proceedings for certain reasons. Such as entering the United States without valid entry documents. *See* Section 1225. A key difference between these two procedures is that in Section 1225, an immigration officer, not an IJ, oversees the process. 8 C.F.R. § 235.3(b)(2)(i). Noncitizens are asked about their background and fear of returning to their former country. Noncitizens are also not entitled to counsel during the initial questioning. *Id.* If during this process, the individual claims asylum or a fear of returning to their home country, "the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer in accordance with 8 CFR § 208.30." 8 C.F.R. § 235.3(b)(4). Then, the officer must provide the individual with a disclosure form that includes an overview of the credible fear interview:

> (A) The purpose of the referral and description of the credible fear interview process;
> (B) The right to consult with other persons prior to the interview and any review thereof at no expense to the United States Government;
> (C) The right to request a review by an immigration judge of the asylum officer's credible fear determination; and
> (D) The consequences of failure to establish a credible fear of persecution or torture.

8 C.F.R. § 235.3(b)(4)(i).

Upon a finding, or a lack thereof, of credible fear, the decision must be reviewed by a supervisor. 8 C.F.R. § 208.30(3)(8). If credible fear is found, the individual is moved into Section 1229a proceedings, and set for a hearing with an IJ. If no credible fear is demonstrated, the individual may *request* a review by an IJ. *Id.*

In *Coalition*, the District of District of Columbia held that under 8 U.S.C. § 1225(b)(1)(A)(iii)(II), an individual who has been paroled without first having been placed in expedited removal *cannot later be designed for expedited removal*.

6

> Noncitizens may be eligible for expedited, rather than section 240, removal only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission. 8 U.S.C. § 1225(b)(1)(A)(i); see id. § 1182(a)(6)(C), (a)(7) (grounds of inadmissibility). Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens "arriving in the United States," and (2) noncitizens who "ha[ve] not been admitted or paroled into the United States" and cannot affirmatively show that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)–(iii). The statute permits the Attorney General (who has since delegated this authority to the DHS Secretary) to designate the population of noncitizens within that second category who will be subject to expedited removal. And that designation lies within the Secretary's "sole and unreviewable discretion." Id. § 1225(b)(1)(A)(iii); see 8 C.F.R. § 235.3(b)(ii).

2025 WL 2192986, at *5. Essentially, *Coalition* found that the statute "forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States." 2025 WL 2192986, at *22.

Closely related, the District of District of Columbia decision in *Make the Road New York v. Noem*, 2025 WL 2494908 (D.D.C. Aug. 29, 2025)[4] found the petitioners, upon a preliminary injunction, were likely to succeed on the merits in stating that Section 1225, as applied to noncitizens detained within the interior of the United States, violates Due Process. *Id.* at *12-18. This Court adopts both of those analyses presented, and the reasoning of those cases here.

**B.     Application to Patel**

Respondents contend that Patel is currently subject to "expedited removal proceedings under 8 U.S.C. § 1225" after his Section 1229a proceedings were dismissed. [DE 22 at 144]. And that he is "detained subject to an expedited order of removal, and awaits processing of his claim of credible fear of persecution or torture." [*Id.* at 145]. However, as Petitioner notes, Patel's "section 1229a proceedings continue to be active, as the decision of an immigration judge becomes

---

[4] Like *Coalition*, this matter is currently on appeal, *Make the Road New York v. Noem*, 25-5320 (D.C. Cir.)  but there is no current stay of the underlying decision.

final upon waiver of appeal or upon expiration of the time of appeal" and that "[Patel] timely filed an appeal of the immigration judge's decision." [DE 25 at 200].

Respondents in other cases have conceded that an individual cannot be in two removal proceedings simultaneously. *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *7 (N.D. Cal. Sep. 12, 2025) (stating that "The Government concedes that Ms. Salcedo Aceros is currently in full removal proceedings under Section 1229, and that while those proceedings are live, she cannot be simultaneously subjected to Section 1225(b)(1)'s expedited removal proceedings."); *Munoz Materano*, 2025 WL 2630826, at *11 ("Respondents therefore expressly concede that, while Munoz Materano's appeal is pending, he remains in Section 240 removal proceedings subject to § 1229a, not expedited removal pursuant to § 1225(b)(1)."). Therefore, as the United States has stated elsewhere, until Patel's appeal process ends, Patel remains in Section 1229a proceedings.

However, even once the appeal process ends, based upon *Coalition*, the Court finds that Section 1225 cannot apply to Patel. Because *Coalition* held that "§ 1225 does not authorize expedited removal of individuals who have ever been paroled into the U.S. under either of its provisions" Patel cannot be subject to Section 1225. Patel was released on his own recognizance, which is understood to be a conditional parole. *See Espinoza*, 2025 WL 2675785, at *6 ("[A] person on conditional parole is usually released on their own recognizance subject to certain conditions such as reporting requirements."). Therefore, Section 1225 is inapplicable to Patel, and in fact, ICE violated the INA by invoking it against Patel. *See Munoz Materano*, 2025 WL 2630826, at *11. Thus, even *after* the appeal process ends, Patel is still properly within Section 1229a proceedings as he is ineligible for Section 1225. *Id.*

Therefore, the Court holds that Patel is subject to standard removal proceedings of 1229a and, subsequently, detention proceedings of Section 1226. The Court must then examine if the process Patel was afforded is consistent with the Due Process Clause.

### C. Lawfulness of Detention

As of today, Patel remains in ICE custody. The Court must determine whether the continued detention is in violation of his Due Process. The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. Respondents contend that, even if Section 1229a is applicable at all, because Patel has already received a proper bond hearing, his procedures follow due process. [DE 22 at 161].

### i. *Private interest*

It is undisputed Patel has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The fact that Patel has already received a bond hearing does not diminish this private interest. Because, as reflected in the IJ order, the IJ essentially declined to hear Patel's case because he had "no relief before the Immigration Court." [DE 1 at 2]. In *Espinoza*, which contains similar facts to the present, the trial court found that a bond hearing, where the IJ "declined to exercise jurisdiction" because the IJ found the individual subject to mandatory detention of Section 1225, not sufficient process. 2025 WL 2675785, at *11

(holding that the bond hearings did not address due process because Petitioner was not afforded the chance for an explanation of their position). There, the Court found the proper remedy to be a proper bond hearing for an IJ to determine the issue of detention on the merits. *Id.* at 12. Additionally, when ICE has initial discretion to detain or release a noncitizen pending removal proceedings, after the initial release, "the petitioner has a protected liberty interest in remaining out of custody." *Hernandez Nieves v. Kaiser*, 2025 WL 2533110, at *4 (N.D. Cal. Sep. 3, 2025). And that due process then "requires a hearing before an immigration judge before re-detention." *Id.* Therefore, the Court finds that *Matthews* first factor favors Patel's position.

### ii. Risk of Erroneous Deprivation

The second factor concerns the risk of the erroneous deprivation of Patel's liberty interest. Without a pre-detention hearing that Patel is entitled, there is a significant risk of the erroneous deprivation of the liberty interest of remaining out of custody. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). Patel was never entitled to an on the merits bond hearing, with counsel and evidence, because the Immigration Judge did not exercise their jurisdiction. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Nor have Respondents demonstrated that Petitioner is a flight risk or a danger to the community. Respondents state that the IJ held Patel was a flight risk, because at the moment of the IJ's hearing, the IJ, incorrectly, stated that Patel was not in removal proceedings at all. [DE 22 at 161]. As a result of that decision, Patel is now in detention. But Patel has demonstrated the *opposite* of Respondents' claim. In attending his IJ hearing and other proceedings, he is demonstrating that he is *not* a flight risk. *Ramirez Clavijo v. Kaiser*, 2025 WL 2419263, at *6. (N.D. Cal. Aug. 21, 2025).

10

Because of a high, if not already evident, risk of erroneous deprivation of Patel's liberty interest, the second *Matthews* factor favors Patel's position.

### iii. United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao v. Hyde*, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025). But Petitioner has no criminal history and has attended his immigration hearings when required after being released on his recognizance. [DE 1 at 8; DE 22-1 at 166]. It is not the role of the United States to "usurp" the role of an Immigration Judge. *Sampiao,* 2025 WL 2607924, at *10. Therefore, the Court finds that the United States' interest without a proper bond hearing is low. *Ramirez Clavijo*, 2025 WL 2419263, at *6. Thus, this factor also favors Patel.

Therefore, the Court finds that all three *Matthews* factors are in favor of Patel. The current detention of Patel without a proper bond hearing is in violation of both the INA and the Due Process Clause.

As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Beltran Barrera v. Tindall*, 2025 WL 2690565, at *7 (W.D. Ky. Sep. 19, 2025); *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in original). The Court will not depart from this norm. As a result, Petitioner must be released. Pursuant to Section 1229a & Section 1226, Petitioner is entitled a bond hearing on the merits

before a neutral Immigration Judge. *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

## IV.   Conclusion

For the reasons stated above, the United States has violated both the INA and Patel's due process rights. The Court **GRANTS** Patel's Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** his immediate release for a neutral bond hearing before an Immigration Judge. Petitioner's motion for a temporary restraining order [DE 19] is **MOOT.** The United States is directed to release Petitioner Patel from custody; and further, to certify compliance with the Court's order by a filing on the docket no later than **October 6, 2025.**

Rebecca Grady Jennings, District Judge
United States District Court

October 3, 2025